**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Darrell BAILEY, Defendant–Appellant.**

No. 95–1004.

United States Court of Appeals, Tenth Circuit.

Feb. 2, 1996.

Raymond P. Moore, Assistant Federal Public Defender (Michael G. Katz, Federal Public Defender, with him on the briefs), Denver, Colorado, for Defendant–Appellant.

Kyra Jenner, Assistant United States Attorney (Henry L. Solano, United States Attorney, with her on the brief), Denver, Colorado, for Plaintiff–Appellee.

Before BALDOCK, SETH and BRORBY, Circuit Judges.

SETH, Circuit Judge.

Appellant Darrell Lamont Bailey was tried and convicted on two counts of assaulting a federal prison employee in violation of 18 U.S.C. § 111(a). Appellant argues on appeal that the district court erred in denying his motion to dismiss the indictment or stay his trial because the master jury wheels from which his grand and petit juries were drawn were not selected in accordance with the procedures mandated by the Jury Selection and Procedure Act, 28 U.S.C. §§ 1861–1869. Appellant also contends that the district court erred in sentencing him to a term of supervised release to run consecutively to an existing term of supervised release.

For substantially the reasons stated in the district court's Memorandum and Order of September 7, 1994, *United States v. Bailey,* 862 F.Supp. 277 (D.Colo.), we affirm the district court's denial of Appellant's motion to dismiss his indictment or stay his trial proceedings. We reverse, however, the district court's imposition of consecutive terms of supervised release.

### The Master Jury Wheels

Appellant argues that, pursuant to 28 U.S.C. § 1867(d), the district court should have stayed or dismissed proceedings against him because the court clerk substantially failed to comply with the provisions of the Jury Selection Act in selecting the master jury wheels from which Appellant's grand and petit juries were drawn. To the extent that Appellant's contentions rest on statutory interpretations, we review the district court's denial of Appellant's motion de novo. *Anderson v. Commissioner,* 62 F.3d 1266, 1270 (10th Cir.). The district court's factual findings, however, will not be disturbed unless clearly erroneous. *Id.*

The district court's Memorandum and Order discusses in detail the pertinent facts and applicable law supporting its denial of Appellant's motion. We outline here only the most salient points.

One of the goals of the Jury Selection Act is to afford federal litigants grand and petit juries that represent random, nondiscriminatory cross sections of the community. 28

U.S.C. §§ 1861–1862. To fulfill this goal, each district court must devise and implement a written plan that, among other things, will "ensure that each county, parish, or similar political subdivision within the district or division is substantially proportionally represented in the master jury wheel for that judicial district, division, or combination of divisions." *Id.* at § 1863(b)(3). Proportionality may be determined either by the number of actual voters in the most recent general election or by the number of registered voters. *Id.*

The federal district court in Colorado has placed into operation a jury plan that divides the state into four divisions: the Denver division (consisting of 23 counties), the Grand Junction division (14 counties), the Pueblo division (21 counties), and the Durango division (5 counties). The plan bases proportionality on voter registration numbers in accordance with § 1863(b)(3) but, in an effort to obtain a better cross section of the community as mandated by § 1863(b)(2), the clerk draws potential jurors from a list that also includes licensed drivers who are not also registered voters.

Appellant does not challenge Colorado's jury plan. Instead, Appellant contests the validity of his grand and petit juries based on the clerk's failure to implement the plan in creating the master jury wheels from which his jury panels were selected. The government concedes that the clerk erroneously determined the proportional representation of eight counties in the district based on combined registered voter/licensed driver lists and five other counties based on erroneous numbers of unknown origin. These errors infect the clerk's calculations for every division, resulting in some counties being overrepresented and others being underrepresented.

Appellant argues that the clerk's failure to compile master wheels in accordance with the Jury Selection Act dictated the dismissal of his indictment or a stay of the trial proceedings against him. Once a court determines that there has been "a substantial failure to comply with the provisions of [the Jury Selection Act] in selecting the grand [or petit] jury," the court must stay the proceedings pending the proper selection of a grand or petit jury or dismiss the indictment, whichever is appropriate. 28 U.S.C. § 1867(d). The district court denied Appellant's motion, concluding that the clerk's errors, while not in conformity with Colorado's jury plan or the Act, did not rise to the level of a "substantial failure to comply with the provisions [of the Act]."

■ We agree with Appellant that Congress considered proportional representation based on voter registration to be a "fundamental" and "important" procedural requirement by the Jury Selection Act. *See* H.R.Rep. No. 1076, 90th Cong., 2d Sess. (1968), *reprinted in* 1968 U.S.C.C.A.N. 1792, 1793 & 1799. This does not mean, however, that every error or deviation in calculating proportionality constitutes "a substantial failure to comply" with the provisions of the Act. If a technical or inadvertent deviation from the mandated procedure has no significant effect on the makeup of the resulting master jury wheel, a clerk's reliance on erroneous voter registration figures cannot be considered a "substantial failure to comply." As the Eleventh Circuit stated in *United States v. Gregory,* 730 F.2d 692, 699 (11th Cir.):

> "Mere 'technical' deviations from the Act or even a number of them are insufficient [to constitute a substantial failure] if they do not frustrate the obtaining of jury lists that represent a cross section of the relevant community and do not result in impermissible forms of discrimination and arbitrariness."

*See also United States v. Barnette,* 800 F.2d 1558, 1567 (11th Cir.); *United States v. LaChance,* 788 F.2d 856, 870 (2d Cir.); *United States v. Schmidt,* 711 F.2d 595, 600 (5th Cir.); *United States v. Bearden,* 659 F.2d 590, 600–01 (5th Cir.).

■ The effect of the clerk's errors on Appellant's grand jury pool, which was compiled based on the proportional representation of each of the four Colorado divisions, was minuscule. Of 300 potential jurors for the entire district, only one juror was misplaced among divisions. As a result, the Denver division was represented by 218 positions instead of 217, and the Pueblo division

was represented by 54 positions instead of 55. *Bailey,* 862 F.Supp. at 281–82. The Durango and Grand Junction divisions were unaffected. Uncontroverted evidence submitted by the government at the hearing on Appellant's motion indicates that there was absolutely no impact on the racial composition of the grand jury pool.

The clerk's errors had a somewhat more pronounced but still not significant effect on Appellant's petit jury pool. The master jury wheel for Appellant's petit jury was compiled based on proportional representation of the 23 counties within the Denver division. In that division, almost every county was misrepresented to some extent as a result of the clerk's errors. The magnitude of the deviations is small, however, exceeding one percent in only a single county, and that county deviated from its actual proportional representation by just over three percent. *Bailey,* 862 F.Supp. at 284–85. In addition, the clerk's figures threw off minority group representation in the petit jury pool by less than one percent. *Id.* at 283.

None of the effects on the master jury wheels from which Appellant's grand and petit juries were drawn is of a magnitude to warrant staying or dismissing any of Appellant's judicial proceedings. The clerk's use of the erroneous numbers, which the clerk apparently believed were pure voter registration numbers, did not significantly deviate from the Jury Selection Act's procedures or purposes. Each county and division remained "substantially proportionally represented" in both the grand and petit master jury wheels as required by 28 U.S.C. § 1863(b)(3). Furthermore, Appellant has failed to show that the clerk's errors excluded a cognizable group or segment of the community from the juror pools in a way or to an extent that would frustrate the Act's underlying purpose of affording litigants grand and petit juries that represent random, nondiscriminatory cross sections of the community. As we stated in *United States v. Test,* 550 F.2d 577, 582 n. 4 (10th Cir.) (quotations and internal quotation marks omitted):

"Mere geographical imbalance [as measured by a division's over representation in a master jury wheel], absent evidence that an identifiable and cognizable segment of the community has been systematically excluded or under represented by reason of such imbalance, does not violate the statutory and constitutional requirement that the jury panel represent a fair cross section of the community."

We therefore conclude that the clerk's errors in determining the number of registered voters for several counties in the Colorado district did not amount to a substantial failure to comply with the provisions of the Jury Selection Act. Neither the nature nor the results of her errors significantly defeated any provision of the Act. Thus, we affirm the district court's denial of Appellant's motion to dismiss his indictment or stay the trial proceedings against him.

**Consecutive Terms of Supervised Release**

■ In addition to a term of imprisonment, the district court sentenced Appellant to a three-year term of supervised release to run consecutively to a prior term of supervised release imposed by a different court for another offense. Because Appellant's challenge to this sentencing action is based on a question of law, we review the district court's imposition of consecutive terms of supervised release de novo.

■ Where a federal statute mandates that separate terms of supervised release run consecutively, we have held that a trial court properly may stack consecutive terms of supervised release for multiple convictions. *United States v. Maxwell,* 966 F.2d 545 (10th Cir.). However, where there is no such independent statutory mandate as is the case here, 18 U.S.C. § 3624(e) governs the relationship of multiple terms of supervised release:

"The term of supervised release commences on the day the person is released from imprisonment and runs *concurrently* with any Federal, State, or local term of probation or supervised release or parole for another offense to which the person is subject...."

(Emphasis added.) The meaning of this provision clearly dictates that the district court

erred in sentencing Appellant to consecutive terms of supervised release for separate offenses. *See United States v. Gullickson,* 982 F.2d 1231, 1236 (8th Cir.):

> "[The supervised release provision of § 3624] unambiguously states that terms of supervised release on multiple convictions are to run concurrently. We are of course bound to follow the plain language of the statute."

Because the district court impermissibly imposed consecutive terms of supervised release, we reverse the district court on this issue.

For the foregoing reasons, we AFFIRM in part, REVERSE in part, and REMAND so that the district court may adjust Appellant's sentence in a manner consistent with this opinion.